UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CAROLYN CLINE, et al., ) | |
| ) | Case No. 1:04-CV-00833 |
| Plaintiffs, ) | |
| ) | JUDGE ANN ALDRICH |
| v. ) | |
| ) | Magistrate Judge David S. Perelman |
| DELMER GOWING, et al., ) | |
| ) | |
| Defendants. ) | MEMORANDUM AND ORDER |
| ) | |
| ) | |

Before the court are a number of motions: (1) plaintiffs' motion for sanctions, including default judgment against defendant Delmer Gowing ("Gowing") [Docket No. 64]; (2) plaintiffs' motion to compel against defendant Philip Torre ("Torre") [Docket No. 67]; (3) Darby O'Brien's ("Darby") motion to intervene as a party defendant [Docket No. 74]; (4) Torre and defendant Pearl Torre's (collective, the "Torres") motion for leave to amend to add affirmative defenses [Docket No. 80]; (5) plaintifs' motion for default judgment against defendants John Everding ("Everding"), Anthony O'Brien ("O'Brien") and Capital Markets Trading Group, LLC ("CMTG") [Docket No. 65]; and (6) O'Brien and CMTG's motion for leave to plead instanter [Docket No. 86]. For the following reasons, the court grants plaintiffs' motion to compel against Torre as described below, grants Darby's motion to intervene, denies the Torres' motion for leave to amend, grants plaintiffs' motion for sanctions against Gowing, and grants plaintiffs' motion for default judgment against O'Brien, Everding and CMTG. O'Brien and CMTG's motion for leave to plead is denied, and judgment is entered for plaintiffs on their claims against Gowing, O'Brien, Everding and CMTG. However, the court will not enter a specific damage amount for the judgment until after the

conclusion of the scheduled trial.

## I. Background

This civil action, brought in May 2004 pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962, 1964, concerns alleged investment fraud schemes perpetrated by the defendants, causing in excess of $8,214,600 in damages to the plaintiffs. The complaint also includes claims for legal malpractice against Gowing and Torre, a constructive trust claim, and an Ohio state pattern of corrupt activity claim. At the outset of the litigation, the court granted plaintiffs' motion for a temporary restraining order ("TRO") [Docket No. 4] to freeze the defendants' assets pending litigation of the claims in this court. Everding, O'Brien and CMTG were all served with plaintiffs' verified complaint [Docket No. 1] shortly after it was filed in early May 2004 [Docket Nos. 21, 8, 16].

A case management order was entered by the court in August 2004 [Docket No. 40], setting a deadline for the amendment of pleadings by December 1, 2004. At no time did any party seek extension of that deadline, though numerous extensions to the discovery and dispositive motion deadlines were sought and granted.

On July 28, 2005, Magistrate Judge Perelman issued a memorandum and order [Docket No. 63] directing Torre to respond to plaintiffs' interrogatories and requests for production. Torre responded in October 2005, but plaintiffs object to Torre's responses, seeking additional alleged statements the plaintiffs may have made against interest, along with documents relating to such statements, as well as documents detailing any home remodeling done to the Torres' home since September 2000. Torre claims that there is no other information and there are no other documents aside from those already provided.

In that same order, Magistrate Judge Perelman granted plaintiffs' motion to compel against

-2-

Gowing [Docket No. 53], which had been filed on February 25, 2005. Gowing did not respond to that motion to compel, and did not comply with Magistrate Judge Perelman's order. Nor did he respond to the plaintiffs' motion for sanctions, filed in November 2005. While Gowing has been proceeding *pro se* in this matter since November 2004, he is a licensed attorney, in good standing with the Florida bar.

Darby filed the instant motion to intervene in June 2006, seeking to assert some claim over assets belonging to O'Brien, based on their divorce proceedings and the disposition of property resulting from those proceedings. O'Brien, who did not even seek leave to answer the complaint until March 7, 2007, filed an opposition to Darby's motion to intervene five days after it was filed. In it, he asserted that Darby knew of the court's order concerning the assets at issue as of at least May 18, 2006, and argued that Darby had thereby waived the ability to intervene because of the one month delay. Darby seeks to intervene in this matter given the court's order directing the disposition of certain O'Brien assets, and O'Brien's use of this court's order to prevent state court jurisdiction over those assets in divorce proceedings.

In October 2006, the Torres filed a motion for leave to amend their answer to add particular affirmative defenses. While the Torres contend that progress in this matter has been less than swift because of criminal litigation arising out of the same facts, the Torres do not explain how or why the affirmative defenses they now seek to add could not have been pleaded based on the facts and law available to the Torres as of December 1, 2004, or when they filed their answer in April 2005.

Finally, in March 2007, O'Brien and CMTG filed the instant motion for leave to answer. In it, O'Brien seems to claim that he was unable to plead or otherwise answer the complaint in this case because of the criminal indictment and trial concerning these same issues. O'Brien's jury trial began in July 2006, one month *after* he responded in opposition to Darby's motion to intervene, and

-3-

O'Brien cites those proceedings as an excuse for why he has not responded to the plaintiffs' complaint until now. In his brief, O'Brien states:

> In light of these overwhelming legal attacks [referring to both the criminal prosecution and this matter], Mr. O'Brien was forced to first defend himself against the federal governments[sic] failed prosecution. While so defending himself, **all** of Mr. O'Brien's assets, real, personal, financial and everything else, were restrained by this Honorable Court. Having exonerated himself from the federal government's failed prosecution, Mr. O'Brien can now focus on defending himself against Plaintiffs' spurious Civil RICO claims.

Defs.' Joint Mot., at 13 [Docket No. 86] (emphasis in original).

## II.    Discussion

### A.    Plaintiffs' Motion to Compel

Despite Torre's insistence that any documents detailing remodeling done to his home are irrelevant, the court finds that any such documents certainly would be as relevant as those for other defendants and their alleged use of plaintiffs' funds to remodel their homes. However, if Torre claims that no such remodeling was performed since September 2000, and that there are therefore no documents detailing such remodeling, he may make such an assertion in a sworn affidavit in answer to request for production 14. Similarly, if there are no other statements, admissions or declarations against interest Torre claims the plaintiffs have made, and no documents in his possession relating to the admission described in Torre's initial answer to interrogatory 15 or any other admissions, he may make such an assertion in the same sworn affidavit. Therefore, the court grants plaintiffs' motion to compel. Torre shall detail any other admissions, declarations or statements against interest that he contends the plaintiffs have made, and produce all related documents, or swear in an affidavit that there are no other such statements and that he possesses no such documents, and Torre shall also produce all documents relating to home remodeling done on his home since September 2000 or

swear in an affidavit that no such remodeling has been performed. Torre shall provide the additional answers and documents to the plaintiffs, or provide a sworn affidavit as described, by April 20, 2007.

### B. Darby's Motion to Intervene

Darby does not specify precisely whether she seeks to intervene as of right or permissively under Federal Rule of Civil Procedure 24. Given the facts alleged, she appears to request intervention as of right, as the disposition of O'Brien's property "may as a practical matter impair or impede [Darby's] ability to protect that interest [relating to property which is the subject of the action]." Fed. R. Civ. P. 24(a)(2). Obviously, given the divorce proceedings and the dispute between Darby and O'Brien over the assets, Darby's interest is not "adequately represented by existing parties." *Id.*

However, O'Brien presents two arguments opposing intervention. First, he argues that the intervention is untimely. Second, he asserts that even if intervention were allowed, the relief sought by Darby is unavailable. With respect to timeliness, the court must consider:

> (a) the point to which the suit has progressed;
> (b) the purpose for which intervention is sought;
> (c) the length of time preceding the application during which the applicant knew or reasonably should have known of its interest in the case;
> (d) prejudice to the original parties due to the failure of the applicant to apply promptly for intervention upon acquiring the knowledge of its interest; and
> (e) any unusual circumstances of the case.

*Linton by Arnold v. Comm'r of Health and Env't, State of Tenn.*, 973 F.2d 1311, 1317-18 (6th Cir. 1992) (citing *Triax v. TRW, Inc.*, 724 F.2d 1224, 1228 (6th Cir.1984); *Mich. Ass'n for Retarded Citizens v. Smith*, 657 F.2d 102, 105 (6th Cir.1981)). Darby sought to intervene approximately one month after learning of the court's order concerning the property at issue, and six weeks after

-5-

learning of this case. Discovery is ongoing in this matter, and Darby seeks to protect apparently legitimate property interests that may be affected by any verdict in this matter. The prejudice to the plaintiffs appears to be minimal, and any prejudice to O'Brien was caused by him. Therefore, the court finds that Darby's motion for leave to intervene is timely.

O'Brien's second argument is inapposite, as Darby has met all four conditions for intervention as of right. Any complaints about the relief Darby might request are better raised when Darby requests relief. The court therefore grants Darby's motion to intervene as a party defendant as of right.

### C. The Torres' Motion for Leave to Add Affirmative Defenses

As the December 1, 2004 deadline to amend pleadings has expired, the Torres must establish good cause for the delay in order for the court to grant leave to amend. *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003). Furthermore, they must demonstrate that the plaintiffs would not suffer undue prejudice if the court granted leave to amend. *Id.* at 905 (citation omitted). The Torres claim that, due to being "forced" to change counsel, new counsel did not discover the applicable affirmative defenses until some research was performed in anticipation of a deposition. However, such an excuse does not constitute good cause. The Torres have not explained how the defenses they seek to add are based upon information discovered since the deadline to amend pleadings, or the filing of their answer. They have not explained how it was impossible for them to have discovered that the defenses were available to them prior to either of those dates. In other words, the defenses the Torres now request could have, and should have, been pleaded in their initial answer. Their failure to plead them does not constitute good cause, and the plaintiffs would suffer prejudice in dealing with new defenses almost two years after the pleadings have been finalized. The court finds that good cause does not exist to excuse the Torres' failure to plead the defenses, and that

-6-

undue prejudice to the plaintiffs would result from granting the motion for leave to amend. Therefore, the court denies the Torres' motion for leave to amend.

### D. O'Brien and CMTG's Motion for Leave to Plead Instanter

O'Brien and CMTG cite a previous memorandum and order of this court in support of their position. *DeFrank v. Roth*, Case No. 1:98-CV-1597, 1998 U.S. Dist. LEXIS 23307 (N.D. Ohio Oct. 2, 1998). In that matter, Roth was approximately two weeks late in responding to the complaint. *Id.*, at *2. In this matter, O'Brien and CMTG are well over two *years* late in responding to the complaint. More to the point, O'Brien did file an opposition to Darby's motion to intervene in June 2006, but waited an additional *nine months* to seek permission to file a late answer. O'Brien's ability to file such a brief just one month before the start of his criminal trial belies his argument that said criminal litigation prevented him from answering the complaint until now.

The fact that other defendants in this matter have been able to answer the complaint and seek delay of these proceedings while criminal matters were pending also belie O'Brien's claim that *his* criminal proceedings prevented him from answering the complaint, or even from requesting more time from this court to answer the complaint until now. In other words, O'Brien was not "forced to first defend himself against the federal governments[sic] failed prosecution." He was required, by the rules governing both civil and criminal procedures in federal courts, to defend himself against both simultaneously, or at the very least, to ask this court for more time because of the more pressing criminal case. O'Brien did nothing of the kind. Instead, he filed a brief to oppose the intervention of his ex-wife and then, *nine months later*, decided to seek leave to answer. The court also notes that no excuse or justification is given for *CMTG's* failure to answer until now. The court finds that O'Brien and CMTG's willful refusal to answer the complaint until nearly three years after its filing constitutes bad faith and outrageous conduct, which would cause extreme prejudice to the defendant

-7-

if ignored, and for those reasons denies O'Brien and CMTG's motion for leave to answer.

### E. Plaintiffs' Motions for Sanctions and Default Judgment

With respect to the motion for sanctions against Gowing, the Sixth Circuit has stated that, "[s]imply put, 'if a party has the ability to comply with a discovery order and does not, dismissal . . . is not an abuse of discretion.'" *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990) (quoting *Reg'l Refuse Sys. v. Inland Reclamation Co.*, 842 F.2d 150, 154 (6th Cir.1988)). Dismissal, however, "is a sanction of last resort that may be imposed only if the court concludes that a party's failure to cooperate in discovery is due to willfulness, bad faith, or fault." *Reg'l Refuse Sys.*, 842 F.2d at 153-54 (citation omitted). The court must also consider "whether the adversary was prejudiced by the dismissed party's failure to cooperate in discovery, . . . whether the dismissed party was warned that failure to cooperate could lead to dismissal, . . . and whether less drastic sanctions were imposed or considered before dismissal was ordered." *Id.* at 155 (citations omitted). However, with respect to warning parties that dismissal is a potential sanction, the Sixth Circuit has stated that "in the absence of notice that dismissal is contemplated a district court should impose a penalty short of dismissal unless the derelict party has engaged in 'bad faith or contumacious conduct.'" *Harris v. Callwood*, 844 F.2d 1254, 1256 (6th Cir. 1988). The presence of such conduct also obviates the need to consider lesser sanctions. *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 367-68 (6th Cir. 1997).

In this matter, the court finds that Gowing's refusal to comply with Magistrate Judge Perelman's order and his refusal to respond to the motion to compel or the motion for sanctions constitute willful conduct and bad faith. The prejudice to the plaintiffs is extreme, given the allegations concerning Gowing's conduct, and Gowing's bad faith means that the court need not have warned Gowing of possible dismissal and need not consider, or impose, lesser sanctions. The

-8-

court therefore grants plaintiffs' motion, and enters default judgment against Gowing as a sanction for his flouting of the court's discovery order. The court also awards attorneys' fees and costs to plaintiffs, as requested, for the filing of the motion to compel and the motion for sanctions. Plaintiffs are directed to submit to the court affidavits establishing the time spent on those motions, as well as the applicable lodestar rate, by April 13, 2007. After the court receives that information, it will make a specific award of attorneys' fees.

Finally, with respect to plaintiffs' motion for default judgment against Everding, O'Brien and CMTG, it is quite clear that none of these parties has responded to the complaint as required by the Federal Rules of Civil Procedure, and that the explanations offered by O'Brien do not come close to excusing his failure to plead, especially since he saw fit to oppose Darby's motion to intervene a full nine months prior to even requesting leave to answer in March 2007. No excuse has been offered to explain CMTG's failure to answer, and Everding has not appeared at all. The court therefore enters default judgment against O'Brien, Everding and CMTG pursuant to Federal Rule of Civil Procedure 55 on all of plaintiffs' claims against them.

However, although the court has entered judgment for the plaintiffs against Gowing, O'Brien, Everding and CMTG, the court shall not enter a specific amount of damages at this time. The court shall schedule a hearing to determine the amount of damages against those four defendants following the scheduled trial against the other defendants.

### III.   Conclusion

For the foregoing reasons, the court grants the plaintiffs' motion to compel [Docket No. 67] as described, grants Darby's motion to intervene [Docket No. 74], denies the Torres' motion for leave to amend [Docket No. 80], and denies O'Brien and CMTG's motion for leave to plead [Docket No. 86]. The court grants plaintiffs' motion for sanctions against Gowing [Docket No. 64] and

plaintiffs' motion for default judgment against O'Brien, Everding and CMTG [Docket No. 65], and enters judgment for plaintiffs on their claims against Gowing, Everding, O'Brien and CMTG. However, the court shall not enter specific damages on the default judgment against those four defendants until after the scheduled trial in this case. The court also awards attorneys' fees to plaintiffs on its motion for sanctions against Gowing, as described above.

  IT IS SO ORDERED.

                /s/Ann Aldrich
                ANN ALDRICH
                UNITED STATES DISTRICT JUDGE

**Dated: March 29, 2007**